IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UDAP INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BUSHWACKER BACKPACK &<br>SUPPLY CO., d/b/a Counter Assault,<br><br>Defendant. | CV 16-27-BU-JCL<br><br>ORDER |

Plaintiff UDAP Industries, Inc. ("UDAP") has filed a motion to strike the counterclaim asserted by Defendant Bushwacker Backpack & Supply Co., d/b/a Counter Assault ("Counter Assault") in its answer to the amended complaint, and for sanctions. Counter Assault has in turn moved to amend the pretrial scheduling order and for leave to assert its counterclaim.

I. **Background**

UDAP and Counter Assault are Montana corporations engaged in the manufacture, distribution, and sale of bear deterrent pepper spray. UDAP filed its Complaint in this case on May 20, 2016, alleging generally that Counter Assault published false and misleading advertisements in violation of federal statutory and

1

Montana common law. The Complaint alleged a federal claim under the Lanham Act, 15 U.S.C. § 1125, and Montana common law claims for intentional interference with business relations or prospective economic advantage, false light, and libel. On August 1, 2016, Counter Assault filed an Answer that did not include any counterclaims.

On August 23, 2016, the Court issued a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16. The scheduling order established September 20, 2016, as the deadline for amending the pleadings, and March 10, 2017, as the discovery deadline. (Doc 16, at 1).

On January 30, 2017, the parties filed a joint motion to amend the scheduling order pursuant to Federal Rule of Civil Procedure 16. The Court granted the motion, and entered the amended scheduling order proposed by the parties. The amended scheduling order gave UDAP until February 10, 2017, to file an Amended Complaint and extended the discovery deadline to June 2, 2017. (Doc. 25, at 1). UDAP filed its Amended Complaint in compliance with the extended deadline, again asserting claims under the Lanham Act and for intentional interference with business relations or prospective economic advantage, false light, and libel. Although UDAP did not specifically plead any new legal claims, it added several new paragraphs to the general allegations section. (Doc. 26).

2

On March 8, 2017, Counter Assault filed an Answer to the Amended Complaint and asserted a Counterclaim against UDAP. Counter Assault's counterclaim contains three counts: (1) a Lanham Act claim, (2) a claim for intentional interference with business relations or prospective economic advantage; and (3) a libel claim. (Doc. 29, at 15-23). On March 13, 2017, Counter Assault amended its Counterclaim to include a number of additional factual allegations. (Doc. 29). Counter Assault did not seek leave of Court before filing either the original or amended Counterclaim.[1]

UDAP has moved under Rule 12(f) to dismiss or strike the Counterclaim on the ground that Counter Assault was required to obtain leave of Court, and seeks sanctions under Rule 16(f). Counter Assault takes the position that it was free to assert its Counterclaim as a matter of right in response to the Amended Complaint, and argues sanctions are not warranted. Alternatively, Counter Assault moves to amend the Rule 16 scheduling order and for leave to file its Counterclaim pursuant to Rule 15.

**II.     Discussion**

    **A.     Amendment as a Matter of Right**

UDAP argues Counter Assault was not entitled to assert a counterclaim for

---

[1] For simplicity's sake, the Court will refer to the original and amended counterclaims as "the Counterclaim."

3

the first time in response to the Amended Complaint without first seeking leave of Court.

The Federal Rules of Civil Procedure do not directly address the question of whether a defendant is entitled as a matter of right to assert new counterclaims in answer to an amended complaint, or whether a defendant must first seek leave of court. Rule 13 makes clear that a counterclaim, whether compulsory or permissive, must be raised in "a pleading" by a "pleader." Fed. R. Civ. P. 13(a)&(b). But because a counterclaim is not one of the pleadings recognized under Rule 7(a), a party seeking to assert a counterclaim must do so in its answer. See Fed. R. Civ. P. 7(a) & 13(a). Prior to the 2009 amendments to the Federal Rules of Civil Procedure, amendments to add omitted counterclaims were governed by Rule 13(f), which provided that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed. R. Civ. P. 13(f) (2007). In the 2009 amendments, Rule 13(f) was "deleted as largely redundant and potentially misleading." 2009 Advisory Committee Notes to Fed. R. Civ. P. 13. The Advisory Committee Notes to Rule 13 now state that "[a]n amendment to add a counterclaim will be governed by Rule 15."

UDAP maintains that under Rule 15, Counter Assault was required to obtain

leave of court before filing its Counterclaim. Rule 15(a)(1) allows a party to amend a pleading once as a matter course within 21 days after serving it, or if the pleading is one that requires a response, within 21 days after service of a responsive pleading or a Rule 12(b),(e), or (f) motion. Rule 15(a)(2) states that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." UDAP argues that because Counter Assault did not timely amend its answer to the original complaint to assert its Counterclaim as a matter of course under Rule 15(a)(1), it was required to seek leave of court under Rule 15(a)(2) before asserting its Counterclaim.

UDAP contends a number of district courts in the Ninth Circuit have reached the same conclusion under similar circumstances. It cites *Horton v. Calvary Portfolio Services, LLC,* 301 F.R.D. 54, 549 (S.D. Cal. 2014) for the proposition that "[l]eave to add a counterclaim omitted from the original answer is governed by Rule 15(a)(2)." *Horton v. Calvary Portfolio Services, LLC,* 301 F.R.D. 54, 549 (S.D. Cal. 2014). See also *Easter Seals, Inc. v. Life, Inc.*, 2010 WL 892189 *2-3 (D. Ariz. March 10, 2010) (applying Rule 15(a) to the defendant's motion for leave to file an omitted counterclaim). But the defendants in those cases were not seeking leave to add counterclaims in response to an amended pleading by the plaintiffs. *Horton* and *Easter Seals* are thus distinguishable, and do not address the issue presented here, which is whether a defendant may assert a

counterclaim as a matter of right when filing an answer to an amended complaint.

Although it appears the Ninth Circuit has yet to address the issue, district courts here and throughout the country have historically taken three different approaches. These approaches have been characterized as narrow, moderate, and permissive. See *Sierra Development Co. v Chartwell Advisory Group, Ltd.*, 2016 WL 6828200 *2 (D. Nev. Nov. 18, 2016). Under the narrow approach, counterclaims as of right are permissible "only if they directly relate to the changes in the amended complaint." *Port-A-Pour, Inc. v. Peak Innovations, Inc.*, 2016 WL 1258552 *2 (D. Colo. March 31, 2016). Under the permissive approach, "once a plaintiff amends a complaint, the defendant always has a right to amend to bring new counterclaims, without regard to the scope of the amendments." *Elite Entm't, Inc. v. Khela Bros. Entm't*, 227 F.R.D. 444, 446 (E.D. Va. 2005).

Falling in between the two, the moderate approach allows counterclaims without leave of court "only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint." *Bern Unlimited, Inc. v. Burton Corp.*, 25 F.Supp.3d 170 (D. Mass. 2014). There is no requirement under this approach "that a defendant specifically tailor its answer to the amended complaint, rather the court considers whether the defendant's answer affects the scope of the litigation in a manner proportional with the amended

complaint." *Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings, LLC*, 2011 WL 2261298 *4 (D. Minn. March 21, 2011). "The rationale for this rule is an equitable consideration that if one party expands its case by adding new theories and claims, the other party may do likewise." *Buffalo Wild Wings, Inc.*, 2011 WL 2261298 *4.

Citing *Bern*, UDAP argues the modern trend is to reject these traditional approaches and "simply apply the Rule 15 standard equally to amended complaints and amended (or new) counterclaims." *Bern*, 25 F.Supp.3d at 178-79. While the *Bern* court forged its own path by rejecting all three approaches, district courts within the Ninth Circuit have not done the same and continue to apply the moderate approach. See e.g. *Sierra Development*, 2016 WL 6828200 *2; *Coppola v. Smith*, 2015 WL 2127965 *3 (E.D. Cal. May 5, 2015); *Adobe Systems Inc. v. Coffee Cup Partners, Inc.*, 2012 WL 387783 *5-6 (N.D. Cal. Sept. 6, 2012).

As one court following the moderate approach recognized, the narrow approach is no longer viable because it was premised in large part on Rule 13(f). *Sierra Development*, 2016 WL 6828200 *2. Courts have found the permissive approach to be problematic because it "would allow the pleadings to be re-opened repeatedly and without limitation, even in response to the most mundane of amendments," thereby depriving the court of the ability to effectively manage litigation. *Adobe Systems*, 2012 WL 387783 *5. See also *Sierra Development*,

2016 WL 6828200 *2. District courts within the Ninth Circuit continue to apply to the moderate approach because it is consistent with Rule 15 and "is the most equitable and manageable" of the three. *Adobe Systems*, 2012 WL 387783 *5. This Court will do the same.

Applying the moderate approach here, the Court first finds that UDAP's Amended Complaint did not change the scope or theory of the case. The Amended Complaint asserts the same four claims set forth in the original Complaint. While the amended pleading adds several paragraphs of factual allegations, it does not add any new legal theories. UDAP explains that it made those changes in an attempt to provide the level of factual specificity necessary to satisfy the heightened pleading standards applicable to its Lanham Act claims under Rule 9(b). And as UDAP points out, the factual allegations it added conform to evidence produced thus far in discovery. Because UDAP simply added factual allegations in support of its already pled claims, the Court finds that the Amended Complaint does not change the scope or theory of the case.

Even if UDAP's Amended Complaint could be said to expand the scope or theory of the case to some degree, the breadth of the changes effected by Counter Assault's Counterclaim far exceed those in the Amended Complaint. The Counterclaim alleges that UDAP engaged in false or misleading advertising, and includes a Lanham Act claim, a libel claim, and a claim for intentional interference

with business relations or prospective economic advantage. If it is allowed to stand, the Counterclaim would expand the scope of the case by making these three claims against UDAP part of the litigation for the first time.

Because UDAP's Amended Complaint did not change the scope or theory or the case and Counter Assault's Counterclaim would have a greater impact on the scope of the litigation, Counter Assault must have leave of Court to proceed with its Counterclaim.

**B.    Amendment with Leave of Court**

In its response to UDAP's motion to strike, Counter Assault alternatively moves to amend the Rule 16 scheduling order and for leave to file its Counterclaim pursuant to Rule 15.

1.    Rule 16

Generally speaking, leave to file an amended pleading should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). When a party seeks leave to file an amended pleading after the deadlines established by the scheduling order has passed, however, Rule 16(b) provides the controlling standard. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16(b) requires that a party show good cause for amending the scheduling order to allow the filing of an amended pleading. *Coleman*, 232 F.3d at 1294. Because Counter Assault's

motion for leave to assert its Counterclaim comes several months after the September 20, 2016, deadline for amending the pleadings, it must satisfy Rule 16(b)'s good cause standard.

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment...." *Johnson*, 975 F.2d at 607. Good cause for modification exists if the deadlines in the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609.

Counter Assault argues there is good cause for allowing it to amend its Answer to assert its proposed Counterclaim because it only recently discovered the extent of UDAP's alleged wrongdoing. According to UDAP, however, Counter Assault was aware of the facts giving rise to its Counterclaim by the time it filed its original answer in June 2016.

Counter Assault concedes that it was generally aware by the time it filed its original answer in August 2016 that UDAP had allegedly made some incorrect and misleading statements in its marketing and advertising. Counsel for Counter Assault summarized those statements in a June 2016 letter to UDAP's attorney. (Doc. 32-1). Counter Assault accused UDAP of falsely stating that its principal,

10

Mark Matheny, was the developer of bear deterrent pepper spray and demanded that it remove such statements from its website and all advertising and marketing materials. Counter Assault also accused UDAP of using misleading labels on its canisters, and falsely claiming that it has the "hottest" bear spray available. (Doc. 32-1).

While Counter Assault was clearly aware of these statements before it filed its original answer, it maintains it did not learn the learn of the "scope and magnitude of UDAP's false and misleading advertising" until February 2017, when it received UDAP's supplemental discovery responses. (Doc. 37, at 3, 10). Counter Assault explains that those supplemental responses included a significant amount of advertising and marketing materials. In a supporting affidavit, counsel for Counter Assault represents to the Court that the majority of the false and misleading marketing and advertising alleged in the Counterclaim was revealed for the first time in UDAP's supplemental discovery responses. (Doc. 38). The Court finds this sufficient for purposes of establishing that Counter Assault was diligent in pursuing discovery, but did not learn of all the facts giving rise to its Counterclaim until it received UDAP's supplemental disclosures in February 2017. Counter Assault filed its Counterclaim approximately one month later. Although it was improper for Counter Assault to do so without first seeking leave of Court, the short time frame reflects that it diligently pursued its Counterclaim

11

once it learned the full extent of UDAP's allegedly false and misleading advertising activities. The Court concludes Counter Assault has satisfied Rule 16's good cause standard, and must next consider whether leave to amend is proper under Rule 15.

    2.    <u>Rule 15</u>

Because leave to amend "shall be freely given when justice so requires," Rule 15 should be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Whether to grant leave to amend is left to the court's discretion. *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007). In determining whether to grant leave to amend, the court considers the following factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint. *U.S. v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

The fifth factor is not relevant here, and UDAP does not argue that Counter Assault's Counterclaim would be futile. UDAP focuses exclusively on the first three factors, and argues leave to amend should be denied Counter Assault's Counterclaim would cause UDAP substantial prejudice, was filed after undue delay, and was filed in bad faith. As the party opposing amendment, UDAP bears the burden of demonstrating why leave to amend should not be granted. *DCD*

12

*Programs v. Leighton,* 833 F.2d 183, 186-87 (9th Cir. 1987).

      a.    *Prejudice*

Prejudice is "the touchstone of the inquiry" under Rule 15, and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence*, 316 F.3d at 1052. Prejudice may result when a party seeks leave to amend late in the litigation, and the amended pleading adds new claims based on different legal theories and requiring proof of different facts. See e.g. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-89 (9th Cir. 1990).

UDAP argues it will be substantially prejudiced by additional delay and expense if Counter Assault is allowed to assert its Counterclaim at this late date. Discovery is set to close in early June 2017, and case is scheduled to go to trial in September 2017. If Counter Assault is granted leave to amend, UDAP contends it will be forced to conduct additional discovery on the new claims, which will be both costly and time consuming. UDAP maintains it will be necessary to vacate the scheduling order to allow for additional discovery and motions, which will delay the adjudication of its own claims against Counter Assault. UDAP argues it will be substantially prejudiced by this delay and expense, and asks the Court to deny Counter Assault leave to amend.

As Counter Assault points out in response, however, the three counts alleged its Counterclaim are based on substantially the same legal theories as

UDAP's claims in the original complaint and involve many of the same facts. Counter Assault maintains that any additional discovery would likely be minimal because the parties have already disclosed most or all advertising media used by them over the years, and have exchanged volumes of financial data containing income and expenses associated with their respective bear spray businesses. While UDAP may well incur additional expense and experience some delay, it has not shown that allowing the Counterclaim will result in prejudice substantial enough to overcome the strong policy of liberally allowing amendments under Rule 15.

It is also worth noting that UDAP takes the position Counter Assault's Counterclaim is compulsory. (Doc. 40, at 22 n. 3.). Assuming, without deciding, that UDAP is correct, "the argument for allowing amendment is especially compelling." *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir. 1975) (citing 3 J. Moore, Federal Practice § 13.33). This is so because Counter Assault would lose its ability to litigate its claims against UDAP if it is barred from asserting what UDAP maintains is a compulsory Counterclaim in this action. See *BDB & Sons Moving, Inc. v. Transguard Ins. Co.*, 2010 WL 4659155 *2 (E.D. Pa. Nov. 16, 2010) (recognizing that "amending to add a compulsory counterclaim weighs in favor of granting leave because impleaded compulsory counterclaims can be later barred by res judicata"); *Hitachi Med. Sys. Am., Inc. v. Horizon Med. Grp.*, 2008 WL 5723531*5 (N.D. Oh. Aug. 29, 2008).

b. *Undue Delay*

UDAP next argues that Counter Assault unduly delayed in seeking leave to assert its Counterclaim. Under this factor, the court considers whether the party seeking leave to amend unduly delayed in filing its motion. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). In "deciding whether a party unduly delayed in raising a counterclaim, a court should first evaluate the time that has passed between the original pleading and the proposed amendment." *In re Circuit Breaker Litigation*, 175 F.R.D. 547, 550-51 (C.D. Cal. 1997). "Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Roybal Ins. Co. of Am. v. Southwest Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 2009). The relevant question is "whether the moving party knew or should have known of the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388.

As discussed above in finding good cause to modify the scheduling order under Rule 16, Counter Assault did not unduly delay in seeking to assert its Counterclaim. While Counter Assault was generally aware when it filed it original answer in August 2016 that UDAP had allegedly engaged in false and misleading advertising, it did not learn of the scope and magnitude of UDAP's alleged misconduct February 2017, when it received UDAP's supplemental discovery

responses. Counter Assault sought leave to amend its complaint approximately two months later. This does not constitute undue delay.

   c. *Bad faith*

Finally, UDAP alleges that Counter Assault has asserted its Counterclaim in bad faith. "Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early." *Mendia v. Garcia*, 165 F.Supp.3d 861, 873 (N.D. Cal. 2016) (citing *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995). UDAP once again takes the position that Counter Assault knew or should have known about the factual allegations contained in its Counterclaim when it filed its initial answer in August 2016. It argues only explanation as to why Counter Assault filed its Counterclaim at this late stage in the litigation process, instead of when it filed its initial answer, is a bad faith desire to delay adjudication of UDAP's claims.

As discussed above, however, Counter Assault has provided a different explanation. Counter Assault explains that it did not learn of the scope and magnitude of UDAP's alleged misconduct until it when it received UDAP's supplemental discovery responses in February 2017. The Court finds no evidence of bad faith on UDAP's part.

 Because leave to amend should be liberally granted, UDAP has not shown that it will be substantially prejudiced, Counter Assault did not unduly delay in

moving to amend, there is no evidence of bad faith, and UDAP takes the position that the Counterclaim is compulsory, leave to amend is properly granted.

### C. Sanctions

UDAP moves for sanctions under Rule 16(f), which permits the Court to enter "any just order" as a sanction for failing to obey a scheduling order. UDAP argues sanction are appropriate here because Counter Assault filed its Counterclaim without leave of court or UDAP's consent after the deadline for amending the pleadings set forth in the Rule 16 scheduling order. UDAP asks the Court to dismiss Counter Assault's Counterclaim with prejudice, prohibit Counter Assault from presenting evidence regarding is Counterclaim at trial, and order Counter Assault to reimburse UDAP for its attorney fees and costs.

Although the Court has concluded that Counter Assault was not entitled to file its Counterclaim without first seeking leave of court, its argument to the contrary was presented in good faith and was within the bounds of established case law. The Court finds that sanctions are not warranted under the circumstances.

## IV. Conclusion

Accordingly, and for the reasons set forth above,

IT IS ORDERED that: (1) Plaintiff's Motion to Dismiss or Strike is DENIED; (2) Plaintiff's Motion for Sanctions is DENIED, and; (3) Defendant's

Motion for Leave to Amend is GRANTED.

DATED this 2nd day of May, 2017.

Jeremiah C. Lynch
United States Magistrate Judge